UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

WILLIAM WHITE,                                    :

                      Petitioner,      :      **REPORT AND**
                                    **RECOMMENDATION**
        - against -            :      **TO THE HONORABLE**
                                    **<u>GEORGE B. DANIELS</u>**

BRIAN FISCHER, Superintendent, Sing Sing   :
Correctional Facility,                            04 Civ. 5358 (GBD)(FM)
                                 :

                    Respondent.
----------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

I.    <u>Introduction</u>

        Petitioner William White ("White") brings this <u>pro</u> <u>se</u> habeas corpus

proceeding, pursuant to 28 U.S.C. § 2254, to challenge his conviction on one count of

Manslaughter in the First Degree after a jury trial in Supreme Court, Bronx County.  On

August 31, 2000, Justice Dominic R. Massaro, before whom the case was tried, sentenced

White to twenty-five years in jail on that count.

        In his petition, White alleges:  (a) that the trial court deprived him of due

process and a fair trial by refusing to instruct the jury with respect to (i) the defense of

justification and (ii) the lesser-included offense of Manslaughter in the Second Degree;

and (b) that his trial counsel provided ineffective assistance.  For the reasons that follow,

White's petition should be denied.  Additionally, White should be denied a certificate of

appealability because he has failed to make the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2).

II.    Background[1]

    A.    People's Case

    The proof at trial would have permitted a reasonable juror to find as follows:

    On January 21, 1998, White and his co-defendant Jose Nales ("Nales") knocked on the door of Apartment 5A at 10 Richman Plaza in the Bronx, which was the residence of Lamont Monroe ("Monroe") and his girlfriend Akibe Whye ("Whye").  (RB at 3-4; AB at 2, 4).  After Monroe answered the door, White and Nales argued with him about a sum of money that he owed them.  (RB at 4; AB at 4).  At the time, Monroe's sister Takeisha Monroe ("Takeisha"), Monroe's aunt Yolanda Woolridge ("Woolridge"), and her friend Kenny McKenzie ("McKenzie") also were in the apartment.  (RB at 3-4; AB at 4).  White and Nales left after a neighbor and Woolridge intervened in the argument.  (RB at 5; AB at 4-5).

    Shortly thereafter, Monroe, Woolridge, and McKenzie went to pick up Whye at St. Lukes Hospital, where she worked.  (RB at 5; AB at 5).  When they exited

---

[1]    The only portions of the trial transcript ("Tr.") that have been provided to the Court relate to the trial court's jury charge and the summations of counsel.  (See Affirm. of Ass't Dist. Att'y Alexis Pimentel, dated Sept. 20, 2005 ("Pimentel Affirm."), Ex. 3).  As the citations that follow indicate, I therefore have relied extensively on the parties' briefs on appeal to prepare this summary of the trial evidence.  (See Pimentel Affirm. Exs. 1 (Appellant's Br. on Appeal ("AB") at 2-12), 2 (Resp't's Br. on Appeal ("RB") at 3-15)).

the building, White and Nales were outside.  After White approached Monroe, the two men resumed arguing.  Monroe then followed White into another building in the same apartment complex, with Nales, Woolridge, and McKenzie following behind.  In the lobby of that building, Monroe and White began to fight.  Monroe, who was considerably larger and stronger, repeatedly threw White against the wall.  Eventually, Woolridge intervened and took Monroe to her car.  (RB at 5; AB at 5).

Woolridge, Monroe, and McKenzie drove to St. Lukes hospital, but Whye had already left in a taxicab.  (RB at 5-6; AB at 5).  When they returned to 10 Richman Plaza, White again approached Monroe, but Woolridge told Monroe to go upstairs to the apartment.  As Woolridge entered the building with Monroe, McKenzie remained outside talking to White.  (RB at 6; AB at 5).  Subsequently, McKenzie also went upstairs.

Whye was already in the apartment when Monroe, Woolridge, and McKenzie returned.  (RB at 6; AB at 6).  A little while later, there was a knock on the apartment door.  (RB at 6; AB at 6).  When Woolridge opened the door, Nales grabbed her by the arm and pulled her from the apartment into the building stairwell.  (RB at 7; AB at 6).  Once there, Woolridge saw White several steps above the fifth floor landing. He was holding a black gun.  Pointing the gun at her, White told Woolridge "to shut [her] fucking mouth up before he killed" her.  (RB at 7; AB at 7).  White then opened the stairwell door about twelve inches, leaned into the hallway, and pointed his gun at Apartment 5A or slightly to the right of it.  (RB at 8; see AB at 7).

3

After Woolridge was seized, Monroe exclaimed, "I'm tired of this . . . they got my aunt." (RB at 7; see AB at 7-8). He then retrieved a knife from the kitchen and went to the front door. (RB at 7; AB at 8). From inside the apartment, Takiesha saw White's arm protruding from the stairwell door holding a sawed-off shot gun. (RB at 8; see AB at 8). As soon as Monroe stepped outside the apartment into the hallway, White shot him in the abdomen. (RB at 8, 13; see AB at 8).

After the shooting, McKenzie called "911." (RB at 15 n.1). Monroe was rushed to the hospital where he later died from the shotgun wound. (See RB at 10, 12; AB at 10).

B.      Charging Conference

On June 28, 2000, White's counsel Arnold S. Kronick, Esq., sought to supplement the requests that he had made during a charging conference the day before. The following colloquy between counsel and the court took place at that time in the absence of both defendants:[2]

> *MR. KRONICK*: The nature of my request for a conference, Your Honor, deals with the precharge conference we conducted yesterday and the fact that I neglected to request the particular charge be given –
>
> THE COURT: Namely?

---

[2]     Although the early portion of the transcript suggests that the application was made by Nales' counsel, Guy Oksenhendler, Esq., the subsequent colloquy makes it clear that it was, in fact, Mr. Kronick who made the request. Accordingly, I have made the changes to the transcript indicated in italics.

4

*MR. KRONICK*:  Which I request at this time –

THE COURT:  Namely?

*MR. KRONICK*:  Justification.

THE COURT:  Anything you want to say?

PROSECUTOR:  Yes.  The People object to that.  There's no evidence in the record at all that says that Lamont Monroe ever threatened, used in any way physical force or weapons against –

THE COURT:  What about the knife?

PROSECUTOR:  Well, there's no testimony that he ever went towards the stairwell, that he ever went at the stairwell.  It says that he left the apartment with a knife.

THE COURT:  It was found on the floor going near the stairwell.

PROSECUTOR:  And where was William White – no it wasn't found on the floor near the stairwell.  It was found in the elevators, away from the stairwell.

THE COURT:  The opposite direction, you're telling me?

PROSECUTOR:  Yes.

THE COURT:  I understand.

PROSECUTOR:  The elevators are to the right where Lamont Monroe was found.

MR. OKSENHENDLER:  Judge, I would join in Mr. Kronick's motion.  I believe there are clear inferences that can be drawn from the fact that Mr. Monroe very aggressively left the apartment; although there were physical attempts to restrain him and it . . . clearly could be considered by the jury

that he was the aggressor in this and that the reaction of another individual was what resulted in his death.

THE COURT: I'll reflect on it. Thank you.

(Tr. 1113-14).

Following a recess, the prosecutor withdrew his objection to the defense's request for a justification charge. (Id. at 1116). Nonetheless, Justice Massaro denied the request, stating:

I find that the defense has not raised self-defense to any level or offered any evidence that actions in self-defense were taken during the course of these proceedings and therefore I deny the application. I don't believe a reasonable view of the evidence is such to support the granting of that charge.

(Id. at 1116-17).

C.    Jury Deliberations

The jury deliberated from June 28 to 30, 2000. During this time, the clerk noted the presence of the petitioner on several occasions: when counsel agreed to submit all exhibits to the jury, when deliberations commenced, when the court considered and responded to four different jury notes, when testimony was read back to the jury, when the "911" call was replayed for the jury, and when the verdict was announced.[3] (See id. at 1241, 1290, 1295-97, 1303-08, 1310).

---

[3]    The transcript is ambiguous as to whether White was present when the court responded to a fifth jury note. (See Tr. 1302 ("the following proceedings take place on the record, in open court, in the hearing and presence of the jury")). However, Judge Massaro subsequently concluded that White was present at that time. (Decision & Order (Massaro, J.), dated Nov. 4, 2005 ("Nov. 4 Order"), at 4-5, 7).

D.    Conviction and Sentencing

On June 30, 2000, the jury returned a verdict of guilty against White on the second count of the indictment charging him with Manslaughter in the First Degree; Nales was acquitted.  (Id. at 1309-10).

On August 31, 2000, Justice Massaro sentenced White, as a second felony offender, to a twenty-five year term of imprisonment.  (AB at 16).

E.    Subsequent Procedural History

White appealed his conviction to the Appellate Division, First Department, alleging that:  (1) the trial court's refusal to charge justification deprived him of his due process rights to a fair trial because there was a reasonable view of the evidence that Monroe was wielding a knife when White fired his gun; and (2) White similarly was denied his due process rights when the trial court refused to submit to the jury the lesser-included offense of Manslaughter in the Second Degree despite evidence that he had fired a single shot recklessly, rather than with the intent to kill or cause serious physical injury to Monroe.  (AB at i-ii).

On April 10, 2003, the Appellate Division unanimously affirmed White's conviction.  See People v. White, 304 A.D.2d 387 (1st Dep't 2003).  In its decision the Appellate Division held that:

> Defendant's request for a justification charge was properly
> denied since there was no reasonable view of the evidence,
> viewed in a light most favorable to defendant, that would
> support such a charge . . . .  The evidence established that

> defendant shot the victim from a hiding place where
> defendant was lying in wait. This premeditated ambush was
> antithetical to a justification defense . . . and defendant's
> suggestion that the victim may have been the aggressor rests
> on speculation. Additionally, the evidence established that
> defendant could have retreated from the scene in complete
> safety . . . .
>
> Similarly, defendant's request for submission of second-
> degree manslaughter was properly denied as unsupported by a
> reasonable view of the evidence, viewed most favorably to
> defendant . . . . Defendant's conduct in hiding in the
> stairwell, aiming his weapon, and shooting the victim as he
> exited his apartment was an intentional act which, at the very
> least, was calculated to inflict serious physical injury.

Id. at 387 (citations omitted).

By letters dated May 19 and June 12, 2003, White sought leave to appeal

the Appellate Division's decision to the Court of Appeals. (Aff. of Ass't Dist. Att'y

Cynthia J. Pree, sworn to on Sept. 14, 2004, Ex. 4). On July 10, 2003, the New York

Court of Appeals summarily denied White's application for leave to appeal. People v.

White, 100 N.Y.2d 589 (2003) (table). White did not file a petition for a writ of

certiorari. (See Pet. ¶ 9(h)).

White subsequently filed a pro se motion in Supreme Court, Bronx County,

seeking to vacate his judgment of conviction pursuant to Sections 440.10 and 440.30 of

the New York Criminal Procedure Law ("CPL"). In his motion, White alleged that the

trial court violated CPL §§ 260.20 and 310.30 by conducting several trial proceedings

outside of his presence, and that his trial counsel's failure to insist on his presence

amounted to ineffective assistance of counsel.  (See White's CPL §§ 440.10, 440.30 motion, dated Dec. 7, 2004 ("440 Motion"), at 27-29).

By decision and order dated November 4, 2005, Justice Massaro denied White's motion.  In his decision, Justice Massaro first indicated that he would not rule on the merits of White's motion because it was procedurally barred by CPL § 440.10(2)(c), which requires that record-based claims be raised on direct appeal.  (Nov. 4 Order at 1 & n.1, 6).  The Justice nevertheless went on to consider White's claims in considerable detail.  Indeed, he found on the basis of the trial record that White "was present when: his counsel agreed to have all of the exhibits submitted to the jury; the Court responded to all of five jury notes; the 911 call was replayed for the jury; and the alternates were excused."  (Id. at 7).  The Justice further held that, under New York law, White "had no right to be present during the charge conference . . . or when the Court instructed the jury to cease their deliberations at the end of each day."  (Id. at 7-8).  Finally, the Court held that the delivery of exhibits to the jury was a ministerial act not requiring White's presence.  (Id. at 8).

White appealed the denial of his 440 Motion to the Appellate Division, First Department.  On or about February 7, 2006, Justice James M. McGuire of the Appellate Division, First Department, denied White's application for leave to appeal the denial of the 440 Motion.  (Aff. of Ass't Dist. Att'y Alexis Pimentel, sworn to on June 7, 2006

("Pimentel Aff."), Ex. 8).  Thereafter, White sought leave to appeal to the New York

Court of Appeals, which was summarily denied on March 27, 2006.  (Id. ¶ 14 & Ex. 9).

     F.     <u>Habeas Petition</u>

        White's habeas petition is dated June 12, 2004, and was received by the Pro

Se Office of this Court, on June 17, 2004.  (<u>See</u> Pet. at 1).  The petition therefore is

timely.  <u>See</u> 28 U.S.C. § 2244(d)(1)(A) (affording defendant one year from "the date on

which the judgment became final by the conclusion of direct review" to file a petition);

<u>Williams v. Artuz</u>, 237 F.3d 147, 150-51 (2d Cir. 2001) (holding that the conviction of a

petitioner who fails to seek certiorari becomes final ninety days after the Court of Appeals

denies leave to appeal).

        In his original petition, White raised the two claims previously raised by his

attorney on direct appeal.  (Pet. ¶¶ 9(f), 12)).  After Your Honor referred White's petition

to me for a Report and Recommendation, however, I granted White's request to stay

further proceedings so that he could exhaust his additional claim relating to his alleged

nonpresence during certain of the state court proceedings.  (<u>See</u> Docket Nos. 4, 6).  After

the state court denied White's 440 Motion, White requested, by letter dated April 4, 2006,

that the Court incorporate his ineffective assistance of counsel claim into his petition.

(<u>See</u> letter from White to the Court, dated Apr. 4, 2006).  Thereafter, the parties submitted

additional papers regarding White's newly-exhausted issues.  (<u>See</u> Docket Nos. 12, 15).

The matter consequently is fully submitted.

III.    Discussion

    A.    Standard of Review

        A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Instead, a state prisoner seeking habeas relief under Section 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated.  See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

        Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in part, that:

>       An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>            (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

        As the Second Circuit has noted, the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'"  Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).  "Under the 'contrary to' clause, a

11

federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Stinson, 229 F.3d. at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that: "a determination of a factual issue by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's

judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."  <u>Williams</u>, 529 U.S. at 389.

B.     <u>Merits</u>

1.     <u>Refusal to Charge Justification</u>

White's first claim is that the trial court deprived him of due process by refusing to instruct the jury regarding his alleged justification defense.  (Pet. at 8A).  In that regard, it is settled law that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one."  <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681 (1986).  Accordingly, a mere instructional error regarding state law does not generally require a federal court to set aside a state court conviction on habeas review.  <u>Gilmore v. Taylor</u>, 508 U.S. 333, 342, 344 (1993) (citing <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991)).  Rather, to prevail on his failure-to-instruct claim, White must show that:  (a) a justification charge was required under New York law; (b) the failure to give that charge rendered his conviction fundamentally unfair; and (c) the state court error is of such a nature that it is remediable by habeas corpus relief under Section 2254.  <u>Davis v. Strack</u>, 270 F.3d 111, 124 (2d Cir. 2001).

Section 35.15 of the New York Penal Law governs White's entitlement to a justification charge.  That statute provides that "[a] person may . . . use physical force upon another person when and to the extent he or she <u>reasonably</u> believes such to be necessary to defend himself . . . from what he or she <u>reasonably</u> believes to be the use or

imminent use of unlawful physical force by such other person."  N.Y. Penal Law

§ 35.15(1) (McKinney 2004) (emphasis added).  A defendant requesting a justification

charge therefore must meet a two-part test, encompassing both a subjective and an

objective component.  See In re Y.K., 87 N.Y.2d 430, 433-34 (1996); People v. Goetz, 68

N.Y.2d 96, 115 (1986).  Specifically, there must be sufficient evidence that (a) the

defendant actually believed deadly physical force was necessary, and (b) this belief was

objectively reasonable under the circumstances.  Jackson v. Edwards, 404 F.3d 612, 623

(2d Cir. 2005) (citing Y.K., 87 N.Y.2d at 433-34, and Goetz, 68 N.Y.2d at 114-15).  The

statute further prohibits the use of deadly force if a person knows that he can "with

complete safety as to himself and others avoid the necessity of doing so by retreating."

N.Y. Penal Law § 35.15(2)(a) (McKinney 2000).

   New York law provides that a trial court must give a justification charge

"whenever there is evidence to support it," People v. Petty, 7 N.Y.3d 277, 284 (2006)

(quoting People v. McManus, 67 N.Y.2d 541, 549 (1986)), and that the failure to do so

constitutes reversible error, McManus, 67 N.Y.2d at 549; People v. Padgett, 60 N.Y.2d

142, 145 (1983).  In deciding whether a defendant is entitled to a justification charge, any

evidence tending to support the defense must be viewed in the light most favorable to the

defendant.  Davis, 270 F.3d at 124-25; McManus, 67 N.Y.2d at 549.  A court is not

required to charge justification, however, where no reasonable view of the evidence

supports the defense.  People v. Watts, 57 N.Y.2d 299, 301 (1982); see McManus, 67

N.Y.2d at 549; Padgett, 60 N.Y.2d at 144-45; see also People v. Butts, 72 N.Y.2d 746, 750 (1988) (court need not adopt an "artificial or irrational" view of the evidence in deciding whether to charge justification).[4]

Turning first to the subjective element of the justification defense, a defendant must present evidence demonstrating that he actually believed that "deadly force was necessary to avert the imminent use of deadly force." Goetz, 68 N.Y.2d at 113; see Y.K., 87 N.Y.2d at 434. Here, however, White did not testify. Accordingly, there was no evidence of his subjective intent.

More importantly, even if the jury could infer from the earlier altercation between Monroe and White, and Monroe's possession of a knife, that White feared that he might be killed, White also had to adduce some evidence that it was objectively reasonable for him to hold that belief to have the jury instructed with respect to justification. See Y.K., 87 N.Y.2d at 434; Goetz, 68 N.Y.2d at 115. White also had to present evidence that he could not have retreated safely. N.Y. Penal Law § 35.15(2)(a). With respect to these issues, Justice Massaro observed that he did not "believe a reasonable view of the evidence is such [as] to support the granting of [a justification] charge." (Tr. 1116-17). Similarly, the Appellate Division found that White's conduct amounted to a "premeditated ambush," not self-defense, and that the "evidence

---

[4]     Because justification is a defense, but not an affirmative defense, when it is charged, "the People bear the burden of disproving it beyond a reasonable doubt." Davis, 270 F.3d at 124.

established that [he] could have retreated from the scene in complete safety." <u>White</u>, 304

A.D.2d at 387.

On habeas review, these factual determinations by the state court must be

presumed to be correct.  <u>See</u> 28 U.S.C. § 2254(e)(1).  Moreover, White has not shown

through clear and convincing evidence, as he must, that these findings were incorrect.

Nor could such a showing be made since the uncontradicted evidence established that

White was in a staircase when Monroe entered the hallway and that there was a door

between the two of them.  Since White could have retreated in complete safety, the trial

court did not commit error, much less error of constitutional dimensions, by rejecting

defense counsel's request for the jury to be instructed concerning the defense of

justification.

    2.    <u>Failure to Charge Lesser Offense</u>

White's second claim is that the trial court's failure to charge Manslaughter

in the Second Degree as a lesser-included offense of Murder in the Second Degree

violated his due process right to a fair trial.  (Pet. at 8B).

A trial judge must charge the jury with respect to a lesser-included offense

when:  "([a]) it is theoretically impossible to commit the greater crime without

committing the lesser and ([b]) a reasonable view of the evidence would permit the jury to

find that the defendant had committed the lesser, but not the greater, offense." <u>Rice v.

Hoke</u>, 846 F.2d 160, 165 (2d Cir. 1998) (citing, <u>inter alia</u>, <u>Keeble v. United States</u>, 412

U.S. 205, 208 (1973), and People v. Glover, 57 N.Y.2d 61, 63 (1982) (per curiam)).

Here, to convict White of Murder in the Second Degree, the jury had to conclude that he

shot Monroe with the intent to cause his death. N.Y. Penal Law § 125.25(1) (McKinney

2004). To convict White of Manslaughter in the Second Degree, however, the jury

merely had to find that he recklessly had caused Monroe's death. Id. § 125.15(1). Given

the lower mens rea requirement, Manslaughter in the Second Degree is a lesser-included

offense of Murder in the Second Degree. See People v. Dingle, 30 A.D.3d 1121 (1st

Dep't 2006).

 Turning to the second showing White must make, both the trial court and

the Appellate Division concluded that White was not entitled to have the lesser-included

offense of Manslaughter in the Second Degree charged. The trial court did, however,

instruct the jury with respect to Manslaughter in the First Degree, which requires that the

defendant, with intent to cause serious physical injury to a person, cause the death of that

person. (See Tr. 1281). In deciding to charge the jury in this manner, Judge Massaro

obviously found that there was no evidence that White had acted recklessly, but without

an intent to cause serious physical injury. The key evidence supporting this conclusion

was Woodridge's uncontradicted testimony that White pointed his sawed-off shotgun in

Monroe's direction before firing.

 Although White takes issue with the trial court's decision not to grant the

requested charge, there is no need to parse the evidence. To prevail on his lesser-included

offense claim, White must show that the state court's refusal to charge Manslaughter in the Second Degree was contrary to, or constituted an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). In <u>Beck v. Alabama</u>, 447 U.S. 625, 627 (1980), the Supreme Court held that the failure to charge the jury with respect to an applicable lesser-included offense violates a defendant's due process rights in a <u>capital</u> case. However, the Court expressly declined to "decide whether the Due Process Clause would require that giving of such instructions in a noncapital case." <u>Id.</u> at 628 n.14. Although circuit courts disagree as to whether due process requires a court to instruct a jury concerning a lesser-included offense in a noncapital case, <u>see</u> <u>Peakes v. Spitzer</u>, No. 04 Civ. 1342 (RMB)(AJP), 2004 WL 1366056, at *11-13 (S.D.N.Y. June 16, 2004) (Report & Rec. of Peck, Mag. J.), the Second Circuit has declined to address this issue, reasoning that it should not announce a new constitutional rule in a habeas case. <u>See</u> <u>Jones v. Hoffman</u>, 86 F.3d 46, 48 (2d Cir. 1996) (per curiam); <u>see also</u> <u>Knapp v. Leonardo</u>, 46 F.3d 170, 179 (2d Cir. 1995) ("Neither the Supreme Court nor this circuit has decided whether the failure to instruct a jury on lesser-included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition."); <u>cf.</u> <u>Williams</u>, 529 U.S. at 412 (phrase "clearly established federal law" in Section 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision").

Consequently, because the Supreme Court has not held that a state court must instruct a jury with respect to a lesser-included offense in a noncapital case, the Appellate Division's rejection of White's lesser-included offense claim cannot be contrary to, or an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1). See Peakes, 2004 WL 1366056, at *12 (collecting cases). White therefore is not entitled to habeas relief based on the trial court's refusal to instruct the jury with respect to the lesser-included offense of Mansalughter in the Second Degree.

### 3. Ineffective Assistance of Counsel Claim

White's final claim is that his trial counsel was ineffective for failing to secure his presence at various points following the close of the evidence. (440 Motion at 5-8). Specifically, White contends that he should have been present, but was not, when counsel requested a supplemental charge, when the court considered and responded to several juror notes, and when jury deliberations were suspended for the day. (440 Motion at 5-8, 27-28). The respondent opposes the Court's consideration of this claim on the grounds that it is untimely, procedurally barred because the state court denied the claim on independent and adequate state grounds, contrary to factual findings which must be presumed to be correct, and neither contrary to, nor an unreasonable application of, the holdings of the Supreme Court. (See Pimentel Aff. ¶ 16). As set forth below, the first of

these grounds precludes virtually all of White's assignments of error, and the remaining objection is meritless.

        a.    <u>Timeliness</u>

As noted earlier, White's conviction became final ninety days after the Court of Appeals denied his application for leave to appeal on July 10, 2003. Pursuant to 28 U.S.C. § 2244(d)(1)(A), he then had an additional year, <u>i.e.</u>, until October 8, 2004, to file his habeas petition. Although White met this deadline, his original petition did not contain an ineffective assistance of counsel claim. Accordingly, that claim was not brought during the limitations period.

In these circumstances, the Court must consider whether White's ineffectiveness claim "relates back" to his original petition pursuant to Rule 15(c) of the Federal Rules of Civil Procedure and 28 U.S.C. § 2242. In its current form, Rule 15(c) provides that an amendment relates back when it arises out of the "conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

In <u>Mayle v. Felix</u>, 545 U.S. 644 (2005), the Supreme Court rejected an expansive reading of the "conduct, transaction, or occurrence" language of Rule 15(c). Thus, it is not enough that White's new claim arose out of the same trial. <u>Id.</u> at 662-64. Instead, White must show that his new ground for relief is connected to his prior claims through a "common core of operative facts." <u>Id.</u> at 664.

Here, with one possible exception, there is no factual nexus between White's ineffective assistance of trial counsel claim and his failure to charge claims. For example, the fact that he may not have been present when exhibits were sent to the jury or when jury deliberations were suspended at the end of a trial day is entirely unrelated to the trial court's allegedly improper failure to instruct the jury with respect to the defense of justification or the lesser-included offense of Manslaughter in the Second Degree. Indeed, these alleged infringements first occurred <u>after</u> Justice Massaro had rejected White's proposed requests to charge and delivered his entire instructions to the jury. Accordingly, these factually-unrelated claims are time barred.[5]

---

[5] Even if the Court were to reach the merits of White's claim regarding these factually-unrelated events, he would not be entitled to habeas relief. In his decision on the 440 Motion, Justice Massaro found that White was present when the jury sent a note seeking exhibits, when the 911 call was replayed for the jury, when the testimony of several witnesses was reread, and when the jury reached its verdict. (<u>See</u> Nov. 4 Order at 7). The Justice, of course, was present on each of these occasions. In his papers, White has not shown, as he must, that the Justice's factual findings regarding any of these events was clearly erroneous. 28 U.S.C. § 2254(e)(1).

Justice Massaro noted in his decision that the record does not indicate whether White was present on one occasion when he instructed the jury that he would not respond to a note "due to the late hour" and "recessed until the following morning." (Nov. 4 Order at 4). Assuming that White was not present at that time, his Sixth Amendment right to be present at all material proceedings still was not violated since the Justice found that he was in court the following morning when the testimony requested in the note was read. <u>See</u> <u>People v. Crespo</u>, 267 A.D.2d 36 (1st Dep't 1999) (allowing a court officer to dismiss the jury for the weekend subject to the court's prior admonitions did not violate defendant's right to be present since this was a "minor ministerial matter").

b.    Timely Claim

The only potentially timely claim relates to White's alleged absence on the occasion that his counsel requested that the jury be instructed with respect to the defense of justification and the crime of Manslaughter in the Second Degree.  It is, in fact, unclear if White is even raising this claim.  (See 440 Motion).  However, because Justice Massaro addressed the claim in his decision, I will as well.  (See Nov. 4 Order at 7-8 & n.4).

In his decision on the 440 Motion, Justice Massaro held that a defendant has no right under New York law to be present during a charge conference.  (See Nov. 4 Order at 7-8 & n.4).  However, even if this aspect of White's ineffective assistance claim were recast as a federal Due Process Clause claim, it is clear that the "content of the instructions to be given to the jury is a purely legal matter, . . . and [that] a conference to discuss those instructions is thus a conference on a question of law at which a defendant need not be present."  United States v. Rivera, 22 F.3d 430, 438-39 (2d Cir. 1994) (citations omitted); accord Salley v. Graham, No. 07 Civ. 455 (GEL), 2008 WL 818691, at *4 (S.D.N.Y. Mar. 27, 2008) (denying writ because " defendant has no right to be present . . . 'where the proceeding at issue involves only questions of law or procedure'") (quoting People v. Rodriguez, 85 N.Y.2d 586, 591 (1995)); Edwards v. Fischer, 414 F. Supp. 2d 342, 361 (S.D.N.Y. 2006) (Report & Rec. of Katz, Mag. J.) (petitioner's due process rights not infringed by absence during robing room conference to discuss proposed Allen charge); Gillespie v. Miller, No. 04 Civ. 295 (LAP)(AJP), 2004 WL

22

1689735, at *17 (S.D.N.Y. July 29, 2004) (Report & Rec. of Peck, Mag. J.) (collecting cases); <u>Cinero v. Strack</u>, No. 98 Civ. 8659 (JSM), 1999 WL 1084228, at *1 (S.D.N.Y. Dec. 1, 1999) ("Petitioner's claim that he was denied due process because he was excluded from a robing room conference concerning a legal issue is frivolous.").

Consequently, even if White's ineffective assistance claim is timely to the extent that he alleges he was absent when the court considered his requests for instructions concerning Manslaughter in the First Degree and justification, White is had no due process right to be present. It follows that White's trial counsel could not have been ineffective for failing to raise an objection to his alleged absence when the charge was discussed.

IV.    <u>Conclusion</u>

For the foregoing reasons, White's habeas petition should be denied. Furthermore, because White has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

V.    <u>Notice of Procedure for Filing of Objections to this Report and Recommendation</u>

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. <u>See also</u> Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the chambers of the Honorable George B. Daniels and to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:     New York, New York
           April 11, 2008

FRANK MAAS
United States Magistrate Judge

Copies to:

Honorable George B. Daniels
United States District Judge

William White [Pro Se]
# 00-A-4949
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

Alexis Pimentel
Assistant District Attorney
Bronx County
198 East 161 Street
Bronx, New York 10451
(718) 590-6523 (fax)